## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Ian Charles Armstrong, | ) |
| | ) |
| Plaintiff, | ) Case No. 16 C 9215 |
| | ) |
| v. | ) Hon. Judge Milton I. Shadur |
| | ) |
| Cook County, Illinois, et al., | ) **JURY DEMAND** |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff Ian Charles Armstrong ("Armstrong") brings this lawsuit against Defendants Thomas Dart ("Dart"), Cara Smith ("Smith"), and Bilqis Jacobs-El ("Jacobs-El") in their official capacities, and Defendants Michael Tylor ("Tylor"), John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 in their individual and official capacities for violations of his substantive due process rights under the Fourteenth Amendment as a pretrial detainee in Cook County Jail under 42 U.S.C. § 1983. Armstrong seeks to recover compensatory and punitive damages and attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988. Armstrong also seeks to recover compensatory damages from Dart in his official capacity and Cook County under the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 et seq.[1]

---

[1] This is Armstrong's First Amended Complaint. The Court received Armstrong's original Complaint on September 23, 2016, which was later filed on October 14, 2016. (Dkt. Nos. 1 and 7.) When Armstrong filed that Complaint, he filed it *pro se* and used the Amended Complaint form, even though it was his original Complaint. This Complaint is therefore Armstrong's actual First Amended Complaint.

## PARTIES, JURISDICTION, AND VENUE

1. Armstrong is a pretrial detainee in Cook County Jail, Division 10. Cook County Jail, Division 10 is part of the Cook County Department of Corrections, which is located in Chicago, Illinois.

2. Dart is the Sheriff of Cook County. As Sheriff of Cook County, one of Dart's primary responsibilities is to administer the Cook County Jail.

3. Smith is the Chief of Policy at the Cook County Sheriff's Office. Upon information and belief, Smith is responsible for the customs and policies used by deputies and officers of the Cook County Sheriff's Office, including the customs and policies related to conditions of confinement, documenting conditions of confinement, grievance procedures, and deputy and officer responsibilities regarding pretrial detainees in Cook County Jail.

4. Jacobs-El is the Director of the Cook County Department of Facilities Management. Upon information and belief, Jacobs-El is responsible for the customs and policies used by plumbers and other personnel of the Department of Facilities Management, including the customs and policies related to the maintenance, operations, services, cleaning, and repairs of County properties and operating equipment, including the Cook County Jail.

5. Tylor is a Correctional Rehabilitation Worker and an employee of Dart.

6. John Doe #1 is a deputy with the Cook County Sheriff's Office whose duties involve monitoring pretrial detainees in Cook County Jail, Division 10.

7. John Doe #2 is a supervising officer with the Cook County Sheriff's Office with supervisory responsibilities over John Doe #1 and other deputies and pretrial detainees in Cook County Jail, Division 10.

8. John Doe #3 is a plumber servicing Cook County Jail, Division 10. Upon information and belief, John Doe #3 is an employee of Cook County.

9. Jane Doe #1 is a librarian in Cook County Jail, Division 10. Upon information and belief, Jane Doe #1 is an employee of Cook County.

10. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

11. The Court has supplemental jurisdiction over the state law claim against Cook County under the Local Governmental and Governmental Employees Tort Immunity Act pursuant to 28 U.S.C. § 1367 because the state law claim is so related to the other claims in this action over which the Court has original jurisdiction that the state law claim forms part of the same case or controversy under Article III of the United States Constitution.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because (a) this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; and (b) all defendants are residents of the State in which this district is located and at least one defendant resides in this judicial district.

## BACKGROUND AND ALLEGATIONS

13. Beginning around May 2016, Armstrong was housed as a pretrial detainee in Cook County Jail, Division 10, Tier 3-D.

14. From May 2016 through approximately September 2016, Armstrong was forced to live in sewage due to a malfunctioning toilet that leaked feces and urine—both his own as well as the excretions of other inmates—into his cell.

15. Sleeping in a lower bunk, just above the toilet-soaked ground of his cell, Armstrong awoke to and fell sleep with the smell of human waste permeating his cell.

16. To prevent his cell from being flooded with human waste, Armstrong used his bare hands to scoop urine and feces back into the toilet. At times, while trying to scoop sewage

off the floor of his cell, Armstrong would vomit into the toilet, only to see the vomit leak back into his cell from the broken toilet.

17. Armstrong requested gloves and other cleaning supplies to help contain the sewage in his cell. John Doe #1 and John Doe #2 refused to provide any such items.

18. Armstrong was thus required to try to absorb the constant flow of bodily fluids into his cell using towels he purchased from the commissary and his own clothes. These efforts slowed the flow of bodily waste moving into his cell, but forced Armstrong to "drip dry" in the nude after showers, unable to use toilet-water-soaked towels for basic personal hygiene. Soon stained brown and yellow, the towels became additional sources of discomforting smells and contamination, as he tried to wash and dry them in the sink within his cell.

19. In June 2016, plumber John Doe #3 concluded that he could not fix the leak in Armstrong's cell without extensive repairs. While no repairs were made, upon information and belief, John Doe #3 falsely reported to the Cook County Department of Corrections and/or the Cook County Department of Facilities Management that Armstrong's cell was in substantial compliance with applicable plumbing regulations.

20. Around August 2016, after months of additional complaints about the wastewater in his cell, John Doe #3 was back in Armstrong's cell. During the August 2016 visit, John Doe #3 appeared to purposefully increase the flow of putrid water running into Armstrong's cell. John Doe #3 also berated and insulted Armstrong throughout the visit.

21. Moreover, upon information and belief, while John Doe #3 knew that he had not repaired the toilet in Armstrong's cell or stopped the flow of raw sewage into the cell—and may have increased the flow of dirty water into the cell—John Doe #3 again reported the cell as being in substantial compliance with applicable plumbing requirements.

22. But Armstrong did not suffer in silence. He told every deputy on duty about the awful conditions inside his cell, including John Doe #1. Although John Doe #1 was aware of the conditions Armstrong was facing, he did nothing to address or correct them.

23. Armstrong reported the conditions in his cell to John Doe #1's supervising officer, John Doe #2. Like John Doe #1, John Doe #2 did nothing to abate the appalling conditions to which Armstrong was subject.

24. Armstrong also tried to file grievance forms with the Cook County Jail. But each time, Tylor, who collects detainee grievance forms as part of his job as a Correctional Rehabilitation Worker, refused to accept Armstrong's grievances. Tylor instead insisted that Armstrong could not file a grievance because Armstrong's cellmate had previously filed a grievance about the same problem before Armstrong arrived in the cell. Thus, Tylor refused to accept any grievance forms from Armstrong. Nor did Tylor do anything to address or prevent Armstrong from having to continue living in sewage.

25. Moreover, when Armstrong tried to make copies of the grievance forms Tylor refused to accept, Jane Doe #1, a librarian at the Cook County Jail, prevented Armstrong from using the copy machine. Like Tylor, John Doe #1, and John Doe #2, Jane Doe #1 knew of the conditions Armstrong was living in, but did nothing to address or prevent the conditions to which Armstrong was being subject.

26. Upon information and belief, Dart and Smith maintain a custom or policy of refusing to allow pretrial detainees to document and formally complain about unconstitutional conditions inside the Cook County Jail by (a) barring Cook County employees and Sheriff's Office personnel from accepting grievance forms documenting unconstitutional conditions of confinement; (b) preventing pretrial detainees from filing their own grievance forms about

previously documented, unconstitutional conditions that have gone unaddressed; (c) preventing pretrial detainees from submitting additional grievance forms based on ongoing unconstitutional conditions; and (d) preventing pretrial detainees from using library resources, including copy machines, to document unconstitutional conditions inside Cook County Jail.

27. Tylor, John Doe #1, John Doe #2, and Jane Doe #1, carried out Dart's and Smith's custom or policy to keep Armstrong under the unconstitutional conditions in his cell, and to prevent Armstrong from completing the grievance procedure required for him to exhaust his administrative remedies related to the unconstitutional conditions to which he was subject inside Cook County Jail.

28. Upon information and belief, Jacobs-El maintains a custom or policy of not repairing plumbing problems inside jail cells at the Cook County Jail that result in unconstitutional conditions for detainees and inmates by (a) refusing to repair plumbing problems inside jail cells; and (b) falsely reporting to the Cook County Department of Corrections and/or the Cook County Department of Facilities Management that the jail cells are in substantial compliance with applicable plumbing regulations.

29. John Doe #3 carried out Jacobs-El's custom or policy to not repair the toilet in Armstrong's cell and to falsely report to the Cook County Department of Corrections and/or the Cook County Department of Facilities Management that Armstrong's cell is in substantial compliance with applicable plumbing regulations.

## COUNT I
### Civil Action for Deprivation of Rights under 42 U.S.C. § 1983
### (against Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 in Their Individual and Official Capacities)

30. Armstrong repeats and incorporates all allegations contained in the paragraphs above, as if fully set forth herein.

31.     Section 1983 of Title 42 of the United States Code provides, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

32.     The Fourteenth Amendment of the United States Constitution guarantees pretrial detainees like Armstrong substantive due process rights.

33.     The conditions to which Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 subjected Armstrong as a pretrial detainee—forcing him to live for months in sewage and to clean his and other inmates' urine and feces with his bare hands and personal clothing—bear no reasonable relationship to a legitimate governmental goal.

34.     Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 knew of and disregarded, in deliberate indifference to the threat of harm to Armstrong, the conditions in which Armstrong was held as a pretrial detainee in Cook County Jail.

35.     Accordingly, Armstrong is entitled to compensatory and punitive damages, as well as attorneys' fees and costs under 42 U.S.C. § 1988(b), from Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 in their individual and official capacities.

**COUNT II**
**Civil Action for Deprivation of Rights under 42 U.S.C. § 1983**
**(against Dart, Smith, and Jacobs-El in Their Official Capacities)**

36.     Armstrong repeats and incorporates all allegations contained in the paragraphs above, as if fully set forth herein.

37. Section 1983 of Title 42 of the United States Code provides, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

38. The Fourteenth Amendment of the United States Constitution guarantees pre-trial detainees like Armstrong substantive due process rights.

39. The conditions to which Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 subjected Armstrong as a pretrial detainee—forcing him to live for months in sewage and to clean his and other inmates' urine and feces with his bare hands and personal clothing—bear no reasonable relationship to a legitimate governmental goal.

40. Tylor, John Doe #1, John Doe #2, John Doe #3, and Jane Doe #1 knew of and disregarded, in deliberate indifference to the threat of harm to Armstrong, the conditions in which Armstrong was held as a pretrial detainee in Cook County Jail.

41. Dart and Smith maintain a custom or policy to prevent pretrial detainees in Cook County Jail, including Armstrong, from documenting and pursuing legal remedies for the unconstitutional conditions of confinement to which they are subject in Cook County Jail. That custom or policy bears no reasonable relationship to a legitimate governmental goal, and acts to institutionalize deliberate indifference on the part of jail officials as to whether conditions in Cook County Jail pose a threat of serious harm to pretrial detainees and other inmates.

42. Tylor, John Doe #1, John Doe #2, and Jane Doe #1 acted pursuant to that custom or policy to deprive Armstrong of his constitutional rights.

43. Jacobs-El maintains a custom or policy to not repair plumbing problems inside jail cells and to falsely report the jail cells are in substantial compliance with applicable plumbing regulations. That custom or policy bears no reasonable relationship to a legitimate governmental goal, and acts to institutionalize deliberate indifference on the part of plumbers and other Department of Facilities Management personnel as to whether conditions in Cook County Jail pose a threat of serious harm to pretrial detainees and other inmates.

44. John Doe #3 acted pursuant to that custom or policy to deprive Armstrong of his constitutional rights.

45. Accordingly, Armstrong is entitled to compensatory and punitive damages, as well as attorneys' fees and costs under 42 U.S.C. § 1988(b), from Dart, Smith, and Jacobs-El in their official capacities.

## COUNT III
**Recovery under the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 et seq.**
(against Dart in his official capacity)

46. Armstrong repeats and incorporates all allegations contained in the paragraphs above, as if fully set forth herein.

47. The Local Governmental and Governmental Employees Tort Immunity Act provides that a local public entity is required to pay compensatory damages for which it or an employee acting within the scope of his or her employment is liable. 745 Ill. Comp. Stat. 10/9-102.

48. The Cook County Sheriff's Office is a local public entity under the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-206.

49. As described above in Counts I and II, Dart, Smith, Tylor, John Doe #1, and John Doe #2 are liable to Armstrong for violating his constitutional rights.

50. At all relevant times, Dart, Smith, Tylor, John Doe #1, and John Doe #2 were employees of the Cook County Sheriff's Office, 745 Ill. Comp. Stat. 10/1-202, acting within the scope their employment.

51. Accordingly, Armstrong is entitled to compensatory damages from Dart in his official capacity, which is the same as the Cook County Sheriff's Office.

## COUNT IV
### Recovery under the Local Governmental and Governmental Employees Tort Immunity Act 745 Ill. Comp. Stat. 10/1-101 et seq.
(against Cook County)

52. Armstrong repeats and incorporates all allegations contained in the paragraphs above, as if fully set forth herein.

53. The Local Governmental and Governmental Employees Tort Immunity Act provides that a local public entity is required to pay compensatory damages for which it or an employee acting within the scope of his or her employment is liable. 745 Ill. Comp. Stat. 10/9-102.

54. Cook County is a local public entity under the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-206.

55. As described above in Counts I and II, Jacobs-El, John Doe #3, and Jane Doe #1 are liable to Armstrong for violating his constitutional rights.

56. At all relevant times, Jacobs-El, John Doe #3, and Jane Doe #1 were employees of Cook County, 745 Ill. Comp. Stat. 10/1-202, acting within the scope their employment.

57. At all relevant times, the Cook County Sheriff's Office is funded by Cook County.

58. Accordingly, Armstrong is entitled to compensatory damages from Cook County.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Armstrong demands judgment against the Defendants and requests the following relief:

i. compensatory and punitive damages for the violation of his constitutional rights;

ii. costs and expenses, including attorneys' fees;

iii. post-judgment interest; and

iv. such other relief as the Court deems just and proper.

Dated: March 27, 2017 Respectfully submitted,

*/s/ Charles W. Douglas, Jr.*
Steven Douglas McCormick (#1824260)
Charles W. Douglas, Jr. (#6289391)
Martin R. Martos, II (#6303908)
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
smccormick@kirkland.com
charles.douglas@kirkland.com
martin.martos@kirkland.com

***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

    I certify that on March 27, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Northern District of Illinois.

                                                            */s/ Charles W. Douglas, Jr.*