IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IAN ARMSTRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16 C 9215 |
| ) | |
| SHERIFF THOMAS DART; ) | |
| CARA SMITH, BILQIS JACOBS-EL, ) | |
| and MICHAEL TYLOR, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ian Armstrong says that he was forced to spend 109 days in a Cook County Jail cell with a malfunctioning toilet that leaked feces and urine into his cell. He has sued Cook County Sheriff Thomas Dart; Cara Smith, the Sheriff's Chief of Policy; Bilqis Jacobs-El, the director of Cook County's Department of Facilities Management; and Michael Tylor, a correctional rehabilitation worker (CRW) at the Jail. The defendants have moved for summary judgment. For the reasons stated below, the Court grants summary judgment in favor of Jacobs-El and also partially in favor of Dart and Smith but otherwise denies defendants' motions.

## Facts

The relevant facts are as follows; the Court takes them in the light most favorable to Armstrong, the non-moving party. Armstrong was confined in a cell in Division 10 of the Jail starting on May 15, 2016. Even before that, this particular cell had a problem

with leaks and with the toilet backing up.  Whenever Armstrong or his cellmate Ardamis Sims flushed the toilet, or nearby inmates flushed theirs, the toilet in Armstrong's cell would back up and leak feces, urine, and toilet water.  At times when Armstrong got out of his top bunk bed, he would step into feces and urine that was standing on the floor.

Armstrong says he tried to file grievances about the unsanitary conditions in his cell on five separate occasions starting in early June 2016.  He contends that Tylor, who was responsible for (among other things) processing grievances for Armstrong's tier, refused to accept them, saying that Armstrong's cellmate had already filed a grievance about the same conditions.  Armstrong kept copies of the grievances he says Tylor refused to accept.  See Pl.'s Exs. 3-7.  They are dated June 6, June 12, June 18, July 1, and July 5, 2016.  Armstrong also says that he told a number of correctional officers about the problems with the toilet and about Tylor's refusal to accept the grievances, and he says that they observed the back-up firsthand.  Armstrong also says that he reported the problem to correctional sergeants and lieutenants, as well as the divisional superintendent.  None of these personnel, he contends, did anything to move him to another cell or remedy the problem.

Via discovery, Armstrong obtained records from the Sheriff and the Department of Facilities Management reflecting over a dozen reports of toilet or plumbing problems in the cell where Armstrong was housed.  Records also would permit a finding that nine correctional officers, two sergeants, and two lieutenants saw or received reports about the broken toilet in Armstrong's cell over the relevant period.

Armstrong contends that the Sheriff routinely ignores its own written grievance procedure, at least with regard to plumbing issues.  There is evidence that would

2

support a finding that under procedures established by the Sheriff, plumbing problems in a cell are considered a potential emergency and that emergency grievances are to be immediately delivered to the superintendent of the jail division in question or to a watch commander (another high-ranking officer). There is also evidence that under the Sheriff's established procedures, when a grievance covers an issue addressed by a prior grievance, the CRW must nonetheless respond to the later grievance in writing. But it does not appear that any of this happened in Armstrong's case. And Tylor's testimony would permit a finding that he simply doesn't follow the latter procedure.

Despite Armstrong's attempts to get relief for the toilet backup as early as June 6, 2016, he remained in the cell for nearly three months after that. During this same period, Armstrong says, he repeatedly requested cleaning supplies, without success. There is evidence reflecting that a plumber with Facilities Management responded to eight work orders regarding the cell and marked each one complete but never actually solved the problem. Armstrong says that the plumber who came to his cell was also verbally abusive.

Armstrong points to testimony from a Rule 30(b)(6) deposition witness for the Sheriff to the effect that a cell should be closed for repairs—which would result in moving prisoners out of the cell—whenever a toilet is clogged, overflowing, or not working. Armstrong also points to testimony that even the plumber who came to his cell thought the cell should have been closed before the end of June 2016. But despite the claimed widespread awareness of the backed-up toilet in Armstrong's cell, the cell was not closed until on or about September 1, more than three months after he or his cellmate first put Sheriff's personnel on notice of the problem. After that, there is

3

evidence that it took a month to fix the plumbing and install a new toilet, and even then problems continued, Armstrong claims.

## Discussion

During the relevant period of time, Armstrong was a pretrial detainee. This means that the Fourth Amendment and a standard of objective reasonableness governs his claims. *See Miranda v. County of Lake*, 900 F.3d 335, 351 (7th Cir. 2018); *see also, McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). A pretrial detainee's claim regarding conditions of confinement differs from that of a convicted prisoner because "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). In bringing a conditions-of-confinement claim, a pretrial detainee "can . . . prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). *See Reed v. Bowen*, 769 F. App'x 365, 369 (7th Cir. 2019).

**1.     Claim against Tylor**

A reasonable jury unquestionably could find that requiring Armstrong to live in a cell with a backed-up, non-working toilet for the extended period he claims was objectively unreasonable, as well as punitive. *Cf. Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (Eighth Amendment case). A reasonable jury could also find that Tylor was responsible for Armstrong's continued exposure to this condition. First, the evidence would permit a jury to find that Tylor ignored, refused to process, or refused to even accept grievances from Armstrong regarding the backed-up toilet. Second, taking the evidence in the light most favorable to Armstrong, a jury reasonably could find that

4

Tylor's actions resulted in minimizing or concealing the fact that Armstrong remained exposed to feces and sewage in his cell for an unusually extended period.

It is true, as Tylor notes, that the evidence shows that a plumber came to the cell on multiple occasions during the relevant period. From this, Tylor asks the Court to infer that his alleged inaction could not possibly have caused Armstrong's harm—suggesting, without saying, that any continued exposure that Armstrong suffered should be laid at the feet of the personnel who did not fix the problem or who failed to move him. But this would require the Court to draw inferences in favor of Tylor—which the Court cannot do on Tylor's summary judgment motion. A reasonable jury could find, given Armstrong's testimony and other evidence tending to show that he tried to file grievances something like every five days but was rebuffed, that if Tylor had processed those grievances, responsible personnel within the Sheriff's office would have taken the steps necessary to move Armstrong to a different cell until the backed-up toilet was repaired once and for all. This is particularly so given the evidence that this was the Sheriff's policy for cells with plumbing problems like the one in Armstrong's cell.

For these reasons, Tylor is not entitled to summary judgment.

2.  *Monell* **claims against Dart, Smith, and Jacobs-El**

The Court turns next to Armstrong's claims against Sheriff Dart, his chief of policy Smith, and Facilities Management director Jacobs-El. There is no evidence that any of these officials was personally involved in the alleged deprivation of Armstrong's rights. Rather, Armstrong's claims against them are "official capacity" claims—effectively, claims against the governmental entities involved—that arise under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

5

To demonstrate liability under *Monell*, a plaintiff must establish three things: the existence of an unconstitutional policy; the culpability of the governmental entity, "which means the [entity's] policymakers were deliberately indifferent to a known or obvious risk that a policy or custom would lead to constitutional violations"; and causation of the deprivation of the plaintiff's constitutional rights. *See, e.g., J.K.J. v. Polk County*, 928 F.3d 576, 587-88 (7th Cir. 2019). The first of these elements, the existence of an unconstitutional policy, can be satisfied by showing that there was an express policy that, when enforced, caused a constitutional deprivation; there was a widespread practice that, though not authorized by express policy, was so well-settled as to constitute a custom or usage; or the constitutional injury was caused by a person with final policymaking authority. *Id.* In addition, "in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." *Glisson v. Ind. Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) (en banc) (quoting *Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 202 (7th Cir. 2016).

In this case Armstrong does not cite other examples of actions or failings by Facilities Management or Sheriff's personnel directed at detainees other than himself. Defendants rely on this to argue that, as a result, Armstrong may not sustain any claims under *Monell.* That is an overstatement. A plaintiff is not "foreclosed from pursuing Section 1983 claims where she can demonstrate that repeated actions directed at [him] truly evince the existence of a policy." *Phelan v. Cook County*, 463 F.3d 773, 789-90 (7th Cir. 2006). But the plaintiff "must demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir.

6

2010). "This may take the form of an implicit policy or a gap in expressed policies, or a series of violations to lay the premise of deliberate indifference." *Id.* (internal quotation marks and citations omitted).

In considering Armstrong's claims, it is worth noting that personnel at the Jail could have avoided the claimed violation of his constitutional rights in one of two ways. The first was by promptly repairing the condition; the second was by moving Armstrong out of the cell. Either would have been sufficient; neither was done.

   a.   **Jacobs-El**

Starting with defendant Jacobs-El, Armstrong cannot maintain a *Monell* policy claim involving Facilities Management's failure to promptly repair the condition in his cell. As just indicated, the constitutional deprivation at issue involves a combination of a broken and unrepaired toilet (or plumbing connected to the toilet) and Armstrong's continued presence in the cell. Facilities Management had responsibility only for the former. To be sure, this by itself does not absolve Facilities Management of responsibility. But the only way it could resolve the problem was to repair the cell's plumbing once and for all, as there is no evidence that Facilities Management had any input into detainee cell assignments. The evidence reflects that a plumber or plumbers were assigned on multiple occasions during the relevant period, but the problem did not get fixed. That is not evidence that would support a finding that Facilities Management had a policy or common practice of ignoring or delaying repairs of plumbing problems in cells.[1] Rather, there is no basis for a finding that Facilities Management's failure to

---

[1] Armstrong says that the plumber showed up "a week or two" after officers told him that a work order had been or would be submitted. For purposes of a *Monell* claim involving the practices of Facilities Management, the relevant interval would appear to be the time

7

remedy the problem resulted from anything worse than negligence or incompetence on the part of the individual plumber or plumbers involved. And on that point, Armstrong has offered no evidence to support a finding that there was a widespread practice of incompetence on the part of Facilities Management that led to constitutional violations.

For these reasons, defendant Jacobs-El is entitled to summary judgment on Armstrong's Facilities Management-related *Monell* claim.

### b. Dart and Smith

With regard to the Sheriff and his chief of policy, Armstrong's primary contention is that the Sheriff's office had a policy of refusing to accept grievances documenting unconstitutional conditions of confinement. The evidence is insufficient to permit a reasonable jury to find a widespread practice in this regard. Armstrong cites only the five occasions on which Tylor refused to accept his grievances. Though there are some situations in which actions vis-à-vis a single plaintiff can permit a finding of a policy under *Monell*, this is not one of those situations. The evidence that Armstrong cites reflects only misconduct by Tylor; there is nothing in this evidence that suggests a broader practice. *See Grieveson v. Anderson*, 538 F.3d 763, 774–75 (7th Cir. 2008) (four repeat incidents experienced by a single individual did not raise a triable issue regarding the existence of a widespread unconstitutional government practice).

Anderson also contends that the evidence shows an unconstitutional policy on the Sheriff's part of failing to close cells with backed-up or broken toilets—or, to put it another way, failing to move inmates from such cells. Defendants argue that this

---

between when it received a work order and when it dispatched a plumber. But that aside, in this case at least, a single instance of undue delay does not permit a reasonable inference of a widespread practice. *See Thomas*, 604 F.3d at 303.

8

claimed policy was not identified in Armstrong's complaint. That is true, but a court may permit amendment of a pleading, even as late as trial, and a "court should freely permit [such] an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). The first of the two parts of this test is plainly satisfied here; as the Court has indicated, the core of the problem underlying Armstrong's lawsuit is that he was left in a cell with backed-up plumbing, and a key question is why. On the second part of the test, though defendants argue an inability to obtain evidence regarding a separate unalleged policy—concerning the failure to provide cleaning supplies to detainees, *see* Dart/Smith Reply at 5-6—they do not suggest any such problem with regard to the failure-to-move claim. Unlike the cleaning supplies contention, which involves unidentified correctional personnel who allegedly refused Armstrong access to cleaning supplies for his cell, the failure-to-move contention does not appear to involve any unidentified persons, and it is fair to assume that all of the evidence regarding why Armstrong was not moved is already in the Sheriff's hands. And defendants still have significant time before trial to marshal whatever evidence they may need to offer on this point. For these reasons, the Court will permit Armstrong to pursue this theory of *Monell* liability.[2]

The evidence is sufficient to permit a reasonable jury to find in Armstrong's favor on this theory of liability. Armstrong again cites only evidence relating to his own (and his cellmate's) situation, but here it is sufficient to clear the summary judgment hurdle.

---

[2] If defendants contend they need more time and can show this promptly, they may ask the Court for a continuance under the last sentence of Rule 15(b)(1).

9

Specifically, unlike his other claims, the evidence does not simply involve a single CRW who would not accept grievances or a single plumber (or two or three) who could not fix a problem. Rather, Armstrong cites evidence that would permit a reasonable jury to find that a dozen or more correctional personnel, including some in higher ranks, were directly aware of the condition in his cell over an extended period but that none of them took any steps to get him moved out. The breadth of this evidence is sufficient to permit a reasonable jury to find that Armstrong was left in the cell not due to a random or isolated event but rather due to a widespread practice of inattention or indifference to unconstitutional conditions of confinement of this sort. A reasonable jury likewise could find in Armstrong's favor on the remaining elements of liability under Monell.[3] Dart and Smith are not entitled to summary judgment on this particular Monell claim.

The Court is constrained to note that there are some arguable inconsistencies between Armstrong's claim against Tylor and his remaining claim against Dart and Smith. Specifically, the premise of the claim against Tylor is that if he had accepted and processed Armstrong's grievances in the manner required, they would have caught the attention of the appropriate personnel and would have led to Armstrong being promptly moved if the condition could not be remedied quickly. By contrast, the premise of Armstrong's Monell claim against Dart and Smith is that despite awareness of the condition by multiple correctional personnel, including higher-ups, there was a practice of ignoring such problems and leaving the affected detainees in place. But the law does not preclude a party from pleading and pursing inconsistent claims or theories, *see,*

---

[3] Armstrong's evidence on the claimed policy of failing to provide cleaning supplies is much narrower, as it does not involve anywhere near as many Sheriff's personnel, and as a result it is insufficient to permit a reasonable jury to clear the first Monell hurdle.

10

*e.g.*, Fed. R. Civ. P. 8(d)(3), and questions of trial strategy are best left to parties and their counsel.

## Conclusion

For the reasons stated above, the Court denies defendant Tylor's motion for summary judgment [138], grants defendant Jacobs-El's motion for summary judgment [134], and partly grants and partly denies defendants Dart and Smith's motion for summary judgment [129]. In addition, the joint motion for extension of pretrial deadlines [172] is granted, and the hearing date of September 3, 2019 is vacated. The deadline for the first exchange with respect to the final pretrial order is extended to September 9, 2019, the date for the second exchange is extended to September 16, and the deadline for the parties to meet and confer and resolve differences is extended to September 18, 2019. The final pretrial order remains due on September 20, 2019. Motions *in limine* remain due on September 11, 2019, and responses remain due on September 18, 2019.

Date: September 2, 2019

_____
MATTHEW F. KENNELLY
United States District Judge